```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/2/07
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
                                        :

**DESSERT BEAUTY, INC.,**           :
      :
      :  **OPINION AND ORDER**
         **Plaintiff,**    :
      :  **06 Civ. 2279 (SAS)**
   - against -      :
      :
      :

**PLATINUM FUNDING CORP.,**  :
      :
    **Defendant.**    :
------------------------------------------------------X
      :

**PLATINUM FUNDING CORP.,**  :
      :
      :
   **Third Party Plaintiff,**  :
      :
   - against -     :
      :

**NEIL SHINDER; RANDI SHINDER, and**  :
**DESSERT BEAUTY HOLDINGS, INC.,**  :
      :
  **Third Party Defendants.**  :
      :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       The present dispute arises out of a factoring agreement between

Dessert Beauty, Inc. ("DBI"), a Barbados corporation that manufactures cosmetics,

and Platinum Funding Corp. ("Platinum"), a New Jersey financing company.  DBI

brought this action to recover funds that it contends were wrongfully withheld by

Platinum.[1]  In its Answer, Platinum asserted a counterclaim against DBI, and a

third-party complaint against Neil and Randi Shinder, Canadian citizens and

principals of DBI, and Dessert Beauty Holdings, Inc. ("DBH"), a Canadian

corporation, as guarantors of DBI's obligations to Platinum (collectively, "Third

Party Defendants").[2]  All parties filed cross-motions for summary judgment.  For

the reasons stated below, DBI's motion for partial summary judgment is denied,

and Platinum's motion for summary judgment is granted in part and denied in part.

## II.    BACKGROUND[3]

### A.    The Parties

DBI is a Barbados corporation in the business of manufacturing and

selling cosmetics.[4]  Randi Shinder and Neil Shinder, both Canadian residents, are

---

[1]     *See* Amended Complaint ("Amend. Compl.") ¶ 1.

[2]     *See* Answer to Amended Complaint, Affirmative Defenses,
Counterclaim and Third Party Complaint ("Answer to Amend. Compl.").

[3]     Unless otherwise noted, the following facts are undisputed.  For ease
of reference I cite solely to DBI's Statement of Undisputed Material Facts
Pursuant to Local Rule 56.1 ("DBI 56.1").

[4]     *See* DBI 56.1 ¶ 1.

President and Director of DBI, respectively.[5]  Randi Shinder is also President of

DBH, a corporation organized under the laws of Canada, which owns one hundred

percent of the outstanding shares of DBI.[6]  Platinum is a New Jersey corporation

that provides factoring services.[7]  This Court has jurisdiction over this matter

pursuant to section 1332(a) of title 28 of the United States Code.

Factoring is a type of accounts receivable financing characterized by

"the discounting of acceptable accounts receivable on a non-recourse, notification

basis."[8]  A factor purchases accounts receivable at a discount from the invoice

amount.  In return for the right to collect on the invoice and retain the difference

between the invoice amount and the discounted purchase price, the factor assumes

the "credit risk on the accounts, defined as the financial inability of the account

---

[5]    *See* Notary Public's Acknowledgment, attachment to 1/28/05
Factoring Agreement between Platinum Funding Corp. and Dessert Beauty, Inc.
("Factoring Agreement"), Ex. A to DBI 56.1; 2/28/07 Deposition of Neil Shinder,
Ex. 4 to Platinum's Counterstatement of Undisputed Material Facts and Statement
of Disputed Facts Submitted Pursuant to Rule 56.1 ("Platinum 56.1"), at 6.

[6]    *See* 1/28/05 Performance Guaranty by DBH ("DBH Guaranty"), Ex. E
to Answer to Amend. Compl., at 1; Notary Public's Acknowledgment, attachment
to DBH Guaranty.

[7]    *See* DBI 56.1 ¶ 2.

[8]    Woelfel, Charles J., *Encyclopedia of Banking & Finance*, at 370 (10th
ed. 1994) ("Encyclopedia of Banking").  *See also* Matthew Bender & Co., Inc.,
1-1 *Asset Based Financing: A Transactional Guide* § 1.04 (2006).

debtor to pay."[9]  The factor typically retains recourse to the account seller in case

other risks result in non-payment, "such as the risk of disputes (*e.g.*, nonpayment

due to nonconforming goods)."[10]  The size of the discount is related to the factor's

assessment of the overall credit risk on the accounts purchased.[11]  As owner of the

account, the factor is typically entitled to receive payment directly from the

account debtor, and to undertake collection activities.[12]

### B.   The Agreements

On January 28, 2005, DBI and Platinum entered into the Factoring

Agreement.[13]  The original term of the Factoring Agreement was six months, but

the parties amended it in February 2005 to add an additional six-month term.[14]

The Factoring Agreement incorporated a simultaneously executed and subordinate

Purchase and Sale Agreement, referred to within the Factoring Agreement as the

---

[9]     Matthew Bender & Co. Inc., 1-6 *Commercial Finance Guide* § 6.04(1)(b) (2006).

[10]    *Id.*

[11]    *See* Robert D. Aicher and William J. Fellerhoff, *Characterization of a Transfer of Receivables as a Sale or a Secured Loan Upon Bankruptcy of the Transferor*, 65 Am. Bankr. L.J. 181, 208 (1991).

[12]    *See* Encyclopedia of Banking, at 370.

[13]    *See* DBI 56.1 ¶ 3.

[14]    *See id.* ¶ 5.

4

"Account Agreement," which detailed critical aspects of the parties' performance.[15] Both the Factoring Agreement and the Account Agreement contained a choice of law provision designating New Jersey state law as governing the agreements.[16]

Under the Factoring Agreement, Platinum purchased groups of receivables from DBI. Upon each purchase, Platinum would advance seventy percent of the face amount of those receivables.[17] When Platinum collected on the receivables from DBI's customers, it would retain a percentage of the receivables as its fee, and pay DBI the net balance that was held in DBI's reserve account.[18] The purchase price for accounts receivable was determined by a Fee and Reimbursements Schedule incorporated within the Account Agreement (the "Fee Schedule"). According to the Fee Schedule, the purchase price equaled the invoice amount less a discount that increased in proportion to the amount of time after purchase that the invoice remained outstanding.[19] Invoices collected within

---

[15] *See* Factoring Agreement ¶ 2. *See also* Purchase and Sale Agreement ("Account Agreement"), Schedule A to Factoring Agreement, ¶ 6.

[16] *See* Factoring Agreement ¶ 11; Account Agreement ¶ 4.

[17] *See* Factoring Agreement ¶ 2; DBI 56.1 ¶ 6.

[18] *See* Factoring Agreement ¶ 2; DBI 56.1 ¶ 6.

[19] *See* Account Agreement at 3.

thirty days would be purchased for the invoice amount less a three percent

discount.[20]  For each additional ten days that an invoice remained outstanding, the

discount increased by one percentage point.[21]  Invoices paid after ninety days,

however, were uniformly discounted by fifteen percent of the invoice amount.[22]

Paragraph Nine of the Factoring Agreement states that Platinum's fee

was based on the delivery by DBI of not less than fifteen million dollars of

approved accounts receivable (the "Semi-Annual Base Sales Amount") during

each six-month period that the Agreement was in effect (a "Term Semi-Annual").[23]

Because the import of the language that follows is disputed by the parties, I quote

the relevant portion in full:

> Seller expressly acknowledges that Platinum has agreed thereto
> in reliance upon Seller's agreement during each Term Semi-
> Annual to deliver at least the Semi-Annual Base Sales Amount
> and that Platinum requires an increased Fee in the event a lesser
> volume of approved Accounts Receivable is agreed upon in any
> Term Semi-Annual.  Consequently, if the aggregate amount of
> approved Accounts Receivable delivered by the Seller to
> Platinum during any Term Semi-Annual, whether by reason of
> Seller's premature termination, reduced level of sales, or
> otherwise, shall be less than the Semi-Annual Base Sales Amount,

---

[20]     *See id.*

[21]     *See id.*

[22]     *See id.*

[23]     *See* Factoring Agreement ¶ 9.

then Seller shall pay to Platinum an adjustment fee on account of such Term Semi-Annual . . . .[24]

Paragraph Nine contains a formula (the "Formula") that is triggered in the event DBI does not meet its Semi-Annual Base Sales Amount in any six month term. The Formula provides that the adjustment fee shall be equal to:

> (a) the product of (i) the actual aggregate fees earned by Platinum from the purchase of Accounts Receivable from Seller for the applicable Term Semi-Annual (or then expired portion thereof) (the "Partial Fee") and (ii) a fraction, the numerator of which is the Semi-Annual Base Sales Amount and the denominator of which is the actual aggregate amount of Accounts Receivable theretofore delivered by Seller in such Term Semi-Annual, less (b) the Partial Fee . . . .[25]

Additionally, the meaning of Paragraph Six of the Factoring Agreement is disputed in the present action. This Paragraph provides in relevant part:

> Seller will . . . (b) pay or reimburse Platinum for all its reasonable costs and expenses incurred in connection with the enforcement or preservation of any rights under this Factoring Agreement, the Security Agreement, the Account Agreements . . . , including, without limitation, reasonable fees and disbursements of counsel to Platinum . . . ."[26]

Simultaneous with the execution of the Factoring and Account

---

[24]    *Id.*

[25]    *Id.*

[26]    Factoring Agreement ¶ 6.

Agreements, the parties also executed a Security Agreement, by which DBI granted a security interest in all of its "present and future property" as collateral against DBH's obligations under the Factoring and Account Agreements.[27] The collateral did not secure the payment of accounts receivable purchased pursuant to those agreements.[28] Randi and Neil Shinder simultaneously executed Guaranty Agreements, by which they guaranteed DBI's performance of its obligations under the Factoring and Account Agreements.[29] Randi Shinder, as president of the holding company, DBH, executed a guaranty of DBI's obligations to Platinum on behalf of DBH.[30]

## C.     The Dispute

The parties' relationship ran from January 28, 2005 to January 28, 2006 and had two separate six-month periods.[31] During the first six-month period (January 28, 2005 through July 28, 2005), DBI surpassed the fifteen million dollar

---

[27]     See 1/28/05 Security Agreement, Ex. B to Answer to Amend. Compl., at 1.

[28]     See id. ¶ 2.

[29]     See Performance Guaranty by Neil Shinder, Ex. C. to Answer to Amend. Compl., ¶ 1; Performance Guaranty by Randi Shinder, Ex. D to Answer to Amend. Compl., ¶ 1.

[30]     See DBH Guaranty ¶ 1.

[31]     See DBI 56.1 ¶ 11.

8

Semi-Annual Base Sales Amount.[32] During the second six-month period (July 29, 2005 through January 28, 2006), DBI delivered and Platinum purchased $6,395,821.09 of Accounts Receivable, thus falling short of the fifteen million dollar Semi-Annual Base Sales Amount by $8,604,178.91.[33]

In or about January 2006, Platinum notified DBI that because of the shortfall, it had calculated what it considered to be due under the Formula and was withholding from DBI's reserve account $410,553.98 from the cash it collected from DBI's customers.[34] To arrive at this figure, Platinum calculated the adjustment fee under the Formula by multiplying (a) the shortfall of $8,604,178.91 by (b) 4.77%, the average rate of return it earned during the whole year.[35] In early February 2006, Platinum informed DBI that it had erred in its previous computation because it had used the average rate of return for the entire year rather than the average rate of return in only the second six-month term.[36] By using 6.134% as the rate of return for part (b) of the Formula's calculation,

---

[32]  *See id.*

[33]  *See id.* ¶ 12.

[34]  *See id.* ¶ 20.

[35]  *See id.* ¶ 21.

[36]  *See id.* ¶ 23.

Platinum calculated that the shortfall entitled it to an additional $117,187.94 from DBI, for a total of $527,741.92.[37] In early February 2006, Platinum also informed DBI that it was going to retain an additional $46,000 from other customer payments as cash collateral pending the resolution of any open issues between the parties.[38] Thus, Platinum retained the sums equal to $117,187.94 and $46,000 from DBI's reserve account, bringing the total funds that Platinum retained from the reserve account of customer payment to $573,741.92.[39] DBI demanded that Platinum return the money.[40]

Presently before the court are two disputed issues: (1) whether Paragraph Nine of the Factoring Agreement constitutes an unenforceable penalty, and (2) whether Paragraph 6(b) of the Factoring Agreement requires DBI to pay Platinum's attorney's fees.

### D.    Procedural History

DBI commenced this action on March 3, 2006 by filing a Complaint that asserted three causes of action: conversion, money had and received, and

---

[37]    *See id.* ¶ 24.

[38]    *See id.* ¶ 25.

[39]    *See id.* ¶¶ 26-27.

[40]    *See id.* ¶ 28.

unjust enrichment.[41]  Platinum filed its Answer, Third-Party Complaint against

Neil and Randi Shinder and DBH, and its Counterclaim against DBI on April 17,

2006.[42]  DBI filed an Amended Complaint on August 3, 2006, which asserted an

additional claim of fraudulent inducement.[43]  On September 20, 2006, Platinum

moved to dismiss the fraudulent inducement claim.  In an Opinion and Order dated

December 26, 2006 (the "December Opinion"), I denied Platinum's motion to

dismiss, holding that DBI had alleged sufficient facts to plead its claim of

fraudulent inducement.[44]

DBI and the Third Party Defendants now move for partial summary

judgment on the conversion, money had and received, and unjust enrichment

---

[41]     *See* Complaint.

[42]     *See* Answer, Affirmative Defenses, Counterclaim and Third Party
Complaint.

[43]     *See* Amend. Compl. ¶¶ 23-49.

[44]     *See Dessert Beauty, Inc. v. Platinum Funding Corp.*, No. 06 Civ.
2279, 2006 WL 3780902, at *8 (S.D.N.Y. Dec. 26, 2006).

claims and to dismiss Platinum's counterclaim and its First[45] and Ninth[46]

Affirmative Defenses.  Platinum, in turn, moves for partial summary judgment (i)

dismissing the money had and received and unjust enrichment claims; (ii) granting

Platinum's request for a declaration that the "adjustment fee" Formula contained

in Paragraph Nine of the Factoring Agreement is fully enforceable and that

Platinum was and is entitled to retain the adjustment fee in the amount of

$527,741.92; (iii) granting Platinum's request for a declaration that the attorney's

fees provision contained in Paragraph 6(b) of the Factoring Agreement is fully

enforceable and that Platinum was and is entitled to retain the amount of

$47,489.50 on account of legal fees incurred in connection with the enforcement

or preservation of its rights under the Agreement; and (iv) awarding Platinum the

balance of its legal fees and expenses in an amount to be determined upon further

submissions by the parties.

---

[45]     Platinum's First Affirmative Defense states that "Plaintiffs Complaint fails to state a cause of action on which relief may be granted."  Answer to Amend. Compl. at 7.  Since I previously ruled on this issue in the December Opinion, I need not discuss it again.  *See Dessert Beauty*, 2006 WL 3780902, at *8.

[46]     Platinum's Ninth Affirmative Defense states that "[t]he Factoring Agreement, including but not limited to Paragraph 9 thereof, is fully enforceable under New Jersey law."  Answer to Amend. Compl. at 8.

## III.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[47] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[48] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[49] "It is the movant's burden to show that no genuine factual dispute exists."[50]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than

---

[47]     Fed. R. Civ. P. 56(c).

[48]     *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

[49]     *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[50]     *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

show that there is "'some metaphysical doubt as to the material facts,'"[51] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[52] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[53]

In contract disputes, "'a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning.'"[54] "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the

---

[51]   *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[52]   *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[53]   *McClellan*, 439 F.3d at 144 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

[54]   *American Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)).

particular trade or business.'"[55] The language of a contract is not ambiguous, however, simply because the parties urge different interpretations, or if one party's view "strain[s] the contract language beyond its reasonable and ordinary meaning."[56] "If the court determines that 'the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms, and those terms may be the basis for summary judgment.'"[57]

      In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[58] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court

---

[55]    *Id.* (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996)).

[56]    *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir. 2005) (quotations and citations omitted).

[57]    *American Home Assurance*, 446 F.3d at 316 (quoting *Dusé v. International Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir. 2001)).

[58]    *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

on a motion for summary judgment.'"[59]  Summary judgment is therefore

inappropriate "if there is any evidence in the record that could reasonably support

a jury's verdict for the non-moving party."[60]

## B.    Choice of Law

A federal court sitting in a diversity case applies the choice of law

rules of the forum state.[61]  "The validity of a contractual choice-of-law clause is a

threshold question that must be decided not under the law specified in the clause,

but under the relevant forum's choice-of-law rules governing the effectiveness of

such clauses."[62]  "When such a provision exists and the jurisdiction chosen by the

parties has a substantial relationship to the parties or their performance, New York

law requires the court to honor the parties' choice."[63]  "[O]nce a court finds that a

contractual choice-of-law clause is valid, the law selected in the clause dictates

---

[59]    *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50,
55 (2d Cir. 1997)). *Accord Anderson,* 477 U.S. at 249.

[60]    *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)
(citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)).

[61]    *See White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281,
284 (2d Cir. 2006).

[62]    *Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d
325, 332 (2d Cir. 2005).

[63]    *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987) (citing
*A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 381 (1957)).

how the contract's provisions should be interpreted."[64]  The Factoring Agreement contains a choice of law provision specifying that the agreement is governed by New Jersey law.[65]  However, "[u]nder New York law . . . tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract."[66]

"New York courts have not directly ruled on which state's substantive law is to be applied to a fraud claim."[67]  However, "[t]he local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort."[68]  In the December Opinion, I held that New Jersey law applied to the Fraudulent Inducement claim in this action.[69]  For the reasons set forth in the December Opinion, I will apply New Jersey law with regard to the remainder of the claims.

---

[64]   *Id.*

[65]   *See* Factoring Agreement ¶ 11.

[66]   *Finance One*, 414 F.3d at 335.

[67]   *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996).

[68]   *Babcock v. Jackson*, 12 N.Y.2d 473, 482 (1963).

[69]   *See Dessert Beauty*, 2006 WL 3780902, at *4-5.

## IV.   APPLICABLE LAW

### A.   Conversion

Conversion is "the wrongful exercise of dominion and control over property owned by another inconsistent with the owner's rights."[70]  When the original possession is lawful, "conversion does not occur until the defendant refuses to return property after demand or until he sooner disposes of the property."[71]

To establish a claim for conversion, a plaintiff must prove "[1] that the alleged offender assumed and exercised the right of ownership over the party's goods or chattels without permission, and [2] excluded the owner from exercising dominion over them."[72]  "When money, as opposed to tangible property, is the subject of a conversion claim, New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the

---

[70]   *Cambridge Mgmt. Group, LLC. v. Robert A. Kosseff & Assoc., P.C.*, No. 05-3402, 2007 WL 2084895, at *3 (D.N.J. July 18, 2007) (quoting *Port-O-San Corp. v. Teamsters Local Union No. 863 Welfare & Pension Funds*, 363 N.J. Super. 431, 440 (N.J. Super. Ct. App. Div. 2003)).

[71]   *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (quotation and citations omitted).

[72]   *Video Pipeline, Inc. v. Buena Vista Home Entm't., Inc.*, 275 F. Supp 2d 543, 576 (D.N.J. 2003), *aff'd*, 342 F.3d 191 (3d Cir. 2003) (citing *Barco Auto Leasing Corp. v. Holt*, 228 N.J. Super. 77, 83 (N.J. Super. Ct. App. Div. 1988)).

plaintiff to establish conversion."[73] "The plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's benefit."[74]

## B.    Money Had and Received

The quasi-contractual theory of money had and received may be maintained "when the defendant has received money which in equity and good conscience belongs to the plaintiff."[75] The action is "comprehensive in its scope, equitable in spirit, although legal in form."[76] "It is less restricted and fettered by technical rules and formalities than any other form of action."[77] However, where a valid contract exists between the parties regarding the issue at dispute, a quasi-

---

[73]    *Cambridge*, 2007 WL 2084895, at *3 (citing *Advanced Enters. Recycling, Inc. v. Bercaw*, 376 N.J. Super. 153, 161 (N.J. Super. Ct. App. Div. 2005)).

[74]    *Id.* (citations omitted).

[75]    *Compton Press, Inc. Employees' Profit Sharing Retirement Plan v. Granada Invs., Inc.,* Civ. A. No. 91-1256, 1992 WL 566329, at *5 (D.N.J. Nov. 23, 1992) (quoting *Hartford Accident & Indemnity Co. v. Benevento*, 133 N.J.L. 315, 319 (N.J. 1945)). *Accord Atlantic Coast Line R. Co. v. State of Florida*, 295 U.S. 301, 309 (1935) ("The claimant, to prevail, must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it.").

[76]    *Compton*, 1992 WL 566329, at *5 (quoting *Hartford*, 133 N.J.L. at 319).

[77]    *Hartford*, 133 N.J.L. at 320.

19

contractual theory, such as money had and received, cannot be maintained.[78]

### C.   Unjust Enrichment

To establish an unjust enrichment claim under New Jersey law, a plaintiff must establish two elements: "[1] that defendant received a benefit and [2] that retention of that benefit without payment would be unjust."[79]  In addition, "'[t]he unjust enrichment doctrine requires that a plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."[80]  However, a quasi-contractual claim, such as unjust enrichment, will not be imposed "if an express contract exists concerning the

---

[78]     *See Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998); *see also Levin v. Gallery 63 Antiques Corp.,* No. 04 Civ. 1504, 2006 WL 2802008, at *19 (S.D.N.Y. Sept. 28, 2006) ("The causes of action for money had and received, promissory estoppel, unjust enrichment, and negligence are all quasi-contract claims and are therefore not viable, where, as here, it is undisputed that the parties entered into an express agreement that governs the dispute.").

[79]     *Adamson v. Ortho-McNeil Pharm., Inc.*, 63 F. Supp. 2d 496, 505 (D.N.J. 2006) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. 1994)).

[80]     *Commerce Bancorp, Inc. v. BK Intern. Ins. Brokers, Ltd.*  490 F. Supp. 2d 556, 561 (D.N.J. 2007) (quoting *VRG*, 135 N.J. at 554).

identical subject matter."[81]  "The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties."[82]

### D.    Attorneys' Fees

"New Jersey has a strong policy disfavoring shifting of attorneys' fees."[83]  Nevertheless, it is well established that "New Jersey law permits parties to a contract to shift liability for attorneys' fees."[84]  "[W]here attorney-fee shifting is controlled by contractual provisions," New Jersey "courts will strictly construe" such provisions.[85]

## V.    DISCUSSION

### A.    Paragraph Nine

DBI claims that the adjustment fee provision contained in Paragraph

---

[81]    *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983) (applying New Jersey law).

[82]    *Id.* (citations omitted).

[83]    *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 569 (N.J. 1999).

[84]    *McClure v. Bank of Am. Corp.*, No. Civ. A. 05-4011, 2006 WL 182070, at *2 (D.N.J. 2006) (citing *Cohen v. Fair Lawn Dairies, Inc.*, 86 N.J. Super. 206, 214-16 (N.J. Super. Ct. App. Div. 1965)).  *Accord North Bergen*, 158 N.J. at 570.

[85]    *North Bergen*, 158 N.J. at 570.

Nine constitutes an unenforceable penalty that is void as a matter of public

policy.[86]  Platinum argues that the adjustment fee is not a damages provision but

instead constitutes an agreed-upon method of performance between the parties.[87]

I find that Paragraph Nine is unambiguous and sets out an alternative

fee structure in the event that DBI delivers less than the fifteen million dollar

Semi-Annual Base Sales Amount of accounts receivable during any six-month

period in which the Agreement is in effect.  The Paragraph clearly states that

Platinum requires a higher "adjustment fee" in the event that DBI delivers less

than fifteen million of accounts receivable:

> [I]f the aggregate amount of approved Accounts Receivable
> delivered by Seller to Platinum during any Term Semi-Annual,
> whether by reason of Seller's premature termination, reduced
> level of sales, or otherwise, shall be less than the Semi-Annual
> Base Sales Amount, then Seller shall pay to Platinum an
> adjustment fee . . . .[88]

The Factoring Agreement does not state that the failure of DBI to deliver fifteen

million dollars of approved accounts receivable would constitute a breach of the

---

[86]     *See* DBI's Memorandum of Law in Support of Its Motion for Partial
Summary Judgment ("Pl. Mem.") at 1.

[87]     *See* Memorandum of Law of Defendant/Third Party Plaintiff Platinum
in Opposition to the Motion of Plaintiff DBI for Partial Summary Judgment and in
Support of Its Cross-Motion for Partial Summary Judgment ("Def. Mem.") at 8.

[88]     Factoring Agreement ¶ 9.

contract. "Generally, contracts are given their plain and ordinary meaning. When the terms of a contract are clear, the court must enforce them as written."[89] Because I find that the formula in Paragraph Nine provides an agreed-upon method of performance under the contract, I need not determine whether the formula would constitute an enforceable liquidated damages provision or an unenforceable penalty provision under New Jersey law.

### B.   Attorneys' Fees

Platinum argues that the Factoring Agreement entitles it to recover its legal fees expended in preserving its rights against DBI in the present dispute.[90] DBI argues that Paragraph 6(b) constitutes an indemnity clause for disputes with third parties, not disputes between the two parties to the Agreement.[91]  I find that Paragraph 6(b) is unambiguous and clearly states that DBI shall "pay or reimburse Platinum for all its reasonable costs and expenses incurred in connection with the enforcement or preservation of any rights" under the Agreement.[92]  The contract does not state that Paragraph 6(b) is limited to disputes between Platinum and

---

[89]     *East Brunswick Sewerage Auth. v. East Mill Assocs., Inc.,* 365 N.J. Super. 120, 125 (N.J. Super. Ct. App. Div. 2004) (citations omitted).

[90]     *See* Def. Mem. at 15.

[91]     *See* Pl. Mem. at 2.

[92]     Factoring Agreement ¶ 6.

third parties.

Nonetheless, given that New Jersey courts strictly construe contractual attorney-fee-shifting provisions, I find that the outcome of the fraudulent inducement claim could affect whether Platinum may take advantage of Paragraph 6(b). If DBI prevails on the fraudulent inducement claim, a trier of fact could reasonably conclude that Platinum did not "enforce" or "preserve" any rights under the Factoring Agreement. As a result, Platinum would not be able to obtain fee-shifting pursuant to Paragraph 6(b) of the Factoring Agreement. Thus, Platinum's motion for partial summary judgment with respect to the award of attorneys' fees is denied.

### C.   DBI's Claims

DBI's conversion claim is predicated on the contention that Platinum is withholding money that rightfully belongs to DBI.[93] However, Platinum claims that it is only withholding money to which it is entitled under Paragraphs Nine and 6(b) of the Agreement. As such, because the ownership of the money is still a disputed factual issue in this case, DBI has failed to establish an essential element for conversion: that the money is identifiably its property. Since DBI is maintaining a fraudulent inducement claim, which, in turn, involves disputed

---

[93]     *See* Amend. Compl. ¶ 35.

24

factual issues, the conversion claim cannot be decided on summary judgment.

DBI's motion for partial summary judgment on the quasi-contractual claims of money had and received and unjust enrichment is also denied. Because the parties entered into an express contract with respect to the issues before the Court, quasi-contractual claims, such as money had and received and unjust enrichment, cannot be maintained. Platinum's cross-motion for partial summary judgment on the claims of money had and received and unjust enrichment is granted.

## D.    **Platinum's Claims**

In addition, Platinum moves for summary judgment with respect to its request for a declaration that the adjustment fee formula in Paragraph Nine is fully enforceable and that Platinum is entitled to retain the adjustment fee in the amount of $527,741.92. This motion is denied because DBI has brought a fraudulent inducement claim involving disputed factual issues. DBI's motion to dismiss Platinum's Ninth Affirmative Defense is denied as well.[94]   Unless DBI prevails on its fraudulent inducement claim, the Factoring Agreement is fully enforceable under New Jersey law.

---

[94]    The Ninth Affirmative Defense asserts, "The Factoring Agreement, including but not limited to Paragraph 9 thereof, is fully enforceable under New Jersey law." Answer to Amend. Compl. at 8.

## VI.   CONCLUSION

DBI's motion for partial summary judgment on the conversion claim is denied.  Platinum's motion for partial summary judgment is granted with respect to the claims of money had and received and unjust enrichment, but is denied with respect to Platinum's other claims.  A conference is scheduled for October 24, 2007 at 4:30 P.M.  The Clerk of the Court is directed to close Plaintiff's motion for partial summary judgment and Defendant/Third Party Plaintiff's cross-motion [Docket No. 29].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 1, 2007

-**Appearances**-

**For Plaintiff/Counterclaim Defendant Dessert Beauty, Inc.
and Third Party Defendants Neil Shinder, Randi Shinder, and
Dessert Beauty Holdings, Inc.**:

Howard J. Rubin, Esq.
Jesse B. Schneider, Esq.
Scott M. Singer, Esq.
DAVIS AND GILBERT L.L.P.
1740 Broadway
New York, NY 10019
(212) 468-4800

**For Defendant/Counterclaimant/Third Party Plaintiff
Platinum Funding Corp.**:

Esther S. Trakinski, Esq.
752 West End Avenue, Suite 14C
New York, NY 10025
(917) 748-1543